```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ROBIN A. PATRUSKY,

                Appellant,                    MEMORANDUM & ORDER
                                              18-CV-2207(JS)
        -against-

JUNGLE TREATS, INC.,

                Appellee.
----------------------------------------X
APPEARANCES
For Appellant:         Michael A. Farina, Esq.
                       Robert L. Pryor, Esq.
                       Pryor & Mandelup, LLP
                       675 Old Country Road
                       Westbury, New York 11590

For Appellee:          Amish R. Doshi, Esq.
                       Doshi Legal Group, P.C.
                       1979 Marcus Avenue, Suite 210E
                       Lake Success, New York 11042
```

SEYBERT, District Judge:

Before the Court is an appeal filed by Robin A. Patrusky ("Patrusky" or "Appellant") from Judge Alan S. Trust's April 13, 2018 order (the "Order") denying Patrusky's motion to avoid Jungle Treats, Inc.'s ("Jungle Treats" or "Appellee") judicial lien in the principal amount of $480,364.80 in Patrusky's Chapter 7 Bankruptcy Proceeding (Bankruptcy No. 16-75552). For the reasons that follow, the Order is AFFIRMED and this appeal is DENIED.

BACKGROUND

I. Factual Background[1]

Patrusky owned a candy company called Nutritious Creations, Ltd. ("Nutritious"). In 2008, she entered into an agreement with Jungle Treats to manufacture nut bars. When the parties' business relationship ended, Jungle Treats commenced a New York State Court action against Patrusky and Nutritious. Ultimately, Jungle Treats obtained a judgment against both Patrusky and Nutritious. Jungle Treats' $480,364.80 judgment lien was entered by the Suffolk County Clerk's Office on May 11, 2015 (the "Lien"). (Lien (D.E. 3 at 93-99) at 98.)

At the time, she lived at 12 Redan Drive, Smithtown, New York ("the Home"), a house she purchased in 2004 for $815,000.00. (Obj. to Mot. (D.E. 3 at 103-13) at 105; Appellant's Br., D.E. 4, at 2.) According to Patrusky, as "her business began to fail" and "her income diminished, she recognized the necessity of selling her Homestead and placed [her home] on the market." (Appellant's Br. at 6.) In October 2013 (before the Lien was entered), she transferred the home to her daughter Jessica Cantanzaro and son-in-law Michael Cantanzaro (the "Children") for a sale price of

---

[1] The following facts are taken from the Notice of Appeal (D.E. 1) and the Bankruptcy Record (D.E. 3). The Bankruptcy Record has attachments, which will be denoted as D.E. 3-1 through 3-5. This decision will refer to page numbers of the Bankruptcy Record as they are denoted on the ECF filing system.

$615,000.00 (the "2013 Transfer"), though in September 2013, the house had been appraised at approximately $800,000.00. (M. Cantanzaro Dep. (D.E. 3 at 115-25) at 118-120.) The sale price was further reduced by a "gift of equity" of $92,250.00 and a seller's concession of $24,757.20. (Obj. to Mot. at 106, ¶ 17; M. Cantanzaro Dep. at 123.) Thus, the Children would pay the then-outstanding mortgage of approximately $497,000.00. (Obj. to Mot. at 106, ¶ 18.)

In March 2016, Jungle Treats learned of the 2013 Transfer and commenced a state court action against Patrusky and the Children for violations of the New York Debtor and Creditor Law ("DCL"). Jungle Treats alleged that the 2013 Transfer was fraudulent. Patrusky and the Children answered; the parties represent that the action has been stayed by Patrusky's bankruptcy petition. (Obj. to Mot. at 107, ¶¶ 20-22.)

In May 2016 (after the Lien was entered, and after Jungle Treats brought the state court action for the 2013 Transfer), the Children conveyed the Home back to Patrusky for no consideration (the "2016 Transfer"). (Obj. to Mot., at 107, ¶ 23; Deed Recorded June 17, 2016, D.E. 3, at 127-31.) The Children continued to reside in the Home and Patrusky lived in the basement, which had a bedroom and bathroom but no kitchen. After the 2016 Transfer, the Children continued to make payments associated with the Home,

including the mortgage, utilities, and taxes. (Obj. to Mot. at 107, ¶ 24; M. Cantanzaro Dep. at 117, 121.)

Six months after the 2016 Transfer, on November 30, 2016, Patrusky filed her bankruptcy petition. (Pet., D.E. 3, at 4-61.) And on June 13, 2017, Patrusky filed her motion for an order avoiding Jungle Treats' lien pursuant to 11 U.S.C. § 522(f). (Mot., D.E. 3, at 62-64.) In her Affirmation, Patrusky claimed that at the time she filed her Petition, she was the "sole owner in fee simple" of the Home. (Affirmation (D.E. 3 at 65-67) at 66, ¶ 5.) Patrusky averred the Home was encumbered by two mortgages: a $546,636.09 Chase Mortgage and a $115,924.99 Capitol One home equity line of credit. (Affirmation at 66, ¶ 7.) She also attached an appraisal indicating the fair market value of the home was $810,000.00. (Appraisal, D.E. 3 at 71-86.) She then claimed that "[s]ince the Real Property is owned and occupied by the Debtor as her principal residence, she is entitled to a homestead exemption in the amount of $165,500.00 pursuant to New York CPLR § 5206(a)." (Affirmation, ¶ 10.) Because the sum of all the liens and the claimed homestead exemption exceeded the appraised value of the Home, Patrusky sought to avoid Jungle Treats' judicial lien.

Jungle Treats objected on two bases: (1) to avoid the Lien, it must have attached to the Home after Patrusky acquired an interest in the Home; and (2) Patrusky had disposed of the Home within 10 years prior to the Petition with the intent to hinder,

4

delay, or defraud Jungle Treats. (Obj. to Mot. at 104, ¶¶ 4-5.) With respect to its first argument, Jungle Treats relied upon <u>In re Scarpino</u> (113 F.3d 338, 341 (2d Cir.1997)) and <u>Farrey v. Sanderfoot</u> (591 U.S. 291, 111 S. Ct. 1825, 114 L. Ed. 2d 337 (2003)). Jungle Treats argued these cases established that the 2015 Lien attached at the moment she acquired the Home--as Jungle Treats saw it, with the 2016 Transfer. (Obj. to Mot. at 108-10, ¶¶ 30-38.)

In her reply, Patrusky argued that the 2013 Transfer was fraudulent, and that "[u]nder New York law, assuming arguendo that a Debtor has made a fraudulent conveyance, the Debtor continues to possess a residual property right in the property conveyed, which right antedates the docketing of the judgment lien." (Reply (D.E. 3 at 132-42) at 133.) Agreeing with Jungle Treats' legal assessment that in order for her to avoid the Lien, it must have attached after she acquired an interest in the Home, Patrusky posited that because the 2013 Transfer was fraudulent, she had an interest in the Home that predated the 2015 Lien.

A. <u>The Bankruptcy Court's Decision</u>

The Bankruptcy Court explained its Ruling at a Conference on March 28, 2018 (the "Ruling Conference"). (Hr'g Tr., D.E. 3-5.) The court characterized its "narrow" inquiry as whether Patrusky could avoid Jungle Treats' judicial lien "under the unique timing circumstances of this dispute" and ruled that

5

the Lien could not be avoided. (Hr'g Tr. 6:9-16.) The court then turned to two cases it found "directly on point": Scarpino and Farrey.

The court noted that when Patrusky "reacquired the property in 2016, the two mortgages [Chase and Capital One] granted by the [C]hildren were already encumbering the property, and the judgment immediately attached to the property as soon as [Patrusky] acquired an interest in it." (Hr'g Tr. 10:9-13.) The court viewed Patrusky's argument as she "now wishes to admit that she made a fraudulent transfer of the property to her children in 2013, and that she therefore always retained some form of equitable ownership in the property, and that therefore her non-recorded equitable interest in the property was always prior to Jungle Treats' judgment lien." (Hr'g Tr. 12:4-9.) The court characterized Patrusky's position as "tainted." (Hr'g Tr. 12:18-19.) The court agreed with Jungle Treats' position that Patrusky could "not utilize Section 522(f) to avoid its judgment lien because its lien attached to the property . . . simultaneous[ly] with [Patrusky's] reacquisition of the property in June 2016." (Hr'g Tr. 9:3-6.)

II. Procedural History

On April 11, 2018, Patrusky appealed to this Court from the Bankruptcy order. (Notice of Appeal, D.E. 1.) She filed her brief on June 7, 2018, (Appellant's Br.), and Jungle Treats filed its opposition on July 9, 2018, (Appellee's Opp., D.E. 6).

6

Patrusky filed her reply on July 18, 2018. (Appellant's Reply, D.E. 7.)

DISCUSSION

I. Legal Standard

On appeal, this Court reviews the Bankruptcy Court's "legal conclusions de novo and its factual findings for clear error." Townsend v. Ganci, 566 B.R. 129, 133 (E.D.N.Y. 2017) (citations omitted), aff'd sub nom. In re Townsend, 726 F. App'x 91 (2d Cir. 2018). "Mixed questions of fact and law are subject to de novo review." In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003) (citations omitted). As the parties here do not dispute the factual timeline dispositive to the issues, this Court will review the Bankruptcy Court's legal conclusions de novo.

II. Analysis

Under New York's "homestead exemption," property not exceeding $150,000[2] that is "owned and occupied as a principal residence[] is exempt from application to the satisfaction of a money judgment." N.Y. C.P.L.R. § 5206(a). "Property" includes "a lot of land with a dwelling thereon." NY CPLR § 5206(a)(1). The exemption of a home worth more than $150,000 "is not void . . . but the lien of a judgment attaches to the surplus." NY CPLR

---

[2] The values for the exemption differ by county. Suffolk County, where the Home is located, sets the value at $150,000. N.Y. C.P.L.R. § 5206(a).

7

§ 5206(d). Furthermore, the Bankruptcy Code "allows a debtor to 'avoid the fixing of' a judgment lien to the extent that the lien would impair an exemption to which the debtor would otherwise be entitled." In re Scarpino, 113 F. 3d at 339 (quoting 11 U.S.C. § 522(f)).

The issue here involves the timeline of events, and when the judgment lien attached to the Home. To compare, the timeline in Scarpino was as follows: a bank acquired a judgment against Scarpino that was entered in 1990. Scarpino did not satisfy the judgment. Scarpino bought a house in 1994 after obtaining a mortgage. In 1995, he petitioned for Chapter 7 bankruptcy. In his petition, he listed the home as an asset and claimed the New York homestead exemption. Shortly thereafter, he moved to avoid the bank's judgment lien. The bank opposed. See In re Scarpino, 113 F. 3d at 339. The bankruptcy court granted Scarpino's motion to avoid the lien and the district court affirmed, holding that the bank's lien "did not attach until sometime after Scarpino owned the property and that he was therefore entitled to avoid the lien pursuant to § 522(f)." Id. at 340. The Second Circuit reversed, holding that "a judgment lien attaches at the moment of the debtor's postjudgment acquisition." Id. at 341.

The Second Circuit noted the Supreme Court's Farrey decision, which explained that "the critical inquiry remains whether the debtor ever possessed the interest to which the lien

8

fixed, before it fixed. In re Scarpino, 113 F.3d at 341 (quoting Farrey, 500 U.S. at 299, 111 S. Ct. at 1830). If he or she did not, § 522(f)(1) does not permit the debtor to avoid the fixing of the lien on that interest." Farrey, 500 U.S. at 299, 111 S. Ct. at 1830. "Therefore, unless the debtor had the property interest to which the lien attached at some point before the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)." Id. at 296, 111 S. Ct. at 1829 (emphasis in original).

As the Second Circuit observed, "[s]ince at least 1813, New York has provided by statute for a lien that automatically attaches to a judgment debtor's real property if the judgment is docketed in the county in which the property is located." In re Scarpino, 113 F. 3d at 341 (citing Hulbert v. Hulbert, 216 N.Y. 430, 440, 111 N.E. 70, 73 (1916); NY CPLR § 5203). "[T]he lien extends not only to real property the debtor owned at the time the judgment was docketed, but also to any real property acquired by [her] thereafter." Id. at 341 (collecting New York state cases). This is "New York's settled rule." Id. at 342 (internal quotation marks omitted).

Patrusky, perhaps realizing that Scarpino and Farrey are indeed on point, attempts to distinguish this case by arguing that she "held fee simple title to the Homestead prior to the docketing of [the Lien] and had only ceased being the title owner of the

9

Homestead by virtue of the 2013 Transfer which [she] argues constituted a fraudulent conveyance." (Appellant's Br. at 10 (emphasis in original).) Essentially, she argues that since the 2013 Transfer was fraudulent, she acquired her legal interest[3] in the Home in 2004 and never lost it. Thus, she argues, her interest predated the Lien, and the Lien is avoidable. She further encourages this Court to narrow the application of Scarpino and Farrey. (Appellant's Br. at 14-15.) However, she does not challenge Scarpino's core proposition that a judicial lien attaches at the moment a debtor acquires a property. She only asks this Court to find that she had the Home before the Lien was entered here. (See Appellant's Reply at 8 ("However, Appellant is not attacking Scarpino's holding so much as its inapplicability to [her m]otion since, unlike the debtor in Scarpino, [she] owned a pre-existing interest in the Homestead").)

Jungle Treats responds that at the time the judgment lien was entered in 2015--after the 2013 Transfer and before the 2016 Transfer--Patrusky had no legal interest in the Home. Jungle Treats argues that the Children had the entire property interest in the Home in 2015, because Patrusky had conveyed the Home to them for value (albeit, below fair market value). Thus, Jungle

---

[3] At various points in her brief, Patrusky refers to her "fee simple title" (p. 10), being the "legal owner" (p. 11), "her interest in the Homestead" (p. 11), and her "residual interest" (p. 21).

10

Treats concludes, the Lien "attached simultaneously with [Patrusky's] acquisition of the [Home] in June 2016." (Appellee's Br. at 8-9). This Court agrees that the Lien attached to the Home when Patrusky reacquired it in 2016, after the Lien had been entered, and declines Patrusky's invitation to limit the holdings of Scarpino and Farrey to aid in this legal maneuvering.

The Court is unmoved by Patrusky's attempt to use her own admittedly deceptive actions to avoid the Lien. She cites several cases and statutes for her proposition that she retained her interest in the Home despite the 2013 transfer--all of which are inapposite. Empire Lighting Fixture Co. v. Practical Lighting Fixture Co., which does not discuss the homestead exemption or Section 522, held that "[a] fraudulent conveyance is void under the New York statute, and may be disregarded, even by a creditor whose judgment is entered afterwards." 20 F. 2d 295, 296 (2d Cir. 1927). Though Patrusky acknowledges that later Second Circuit cases generally adopt the position that fraudulent transfers are voidable, and not void per se, (see In re Hirsch, 339 B.R. 18 (E.D.N.Y. 2006) ("a fraudulent conveyance is voidable under New York law, but is not void ab initio") (comparing Empire Lighting and In re Faraldi, 286 B.R. 498 (E.D.N.Y. 2002)), she argues that DCL § 278 is aligned with Empire. DCL § 278 states that

> 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may,

11

> as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or immediately from such a purchaser,
>
> (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> (b) Disregard the conveyance and attach or levy execution upon the property conveyed.

At the outset, this section of the DCL is clearly intended to protect valid creditors, not debtors who make legally dubious transfers. It allows a creditor to have a conveyance set aside "to the extent necessary to satisfy his claim." Further, while Patrusky now claims that the 2013 Transfer was fraudulent, the Children did give consideration for the transaction when they assumed the mortgage, and her son-in-law's deposition testimony indicated that the Children were not aware of any fraud at the time she sold them the Home. (M. Catanzaro Dep. at 120-121.) Thus, by its plain terms, the statute does not apply. And under prevailing Second Circuit law, the transaction would merely be voidable, not void.

In re Faraldi similarly does not discuss avoiding judicial liens under Section 522 and departs from the general rule that fraudulent transfers are voidable, not void. In any event, the case does not help Patrusky because even though the court concluded that fraudulent transfers are void under applicable law,

12

it did so to protect a creditor's interest. 286 B.R. at 503 ("a fraudulent conveyance is void under New York statute, and may be disregarded, even by a creditor whose judgment is entered afterwards") (quoting Empire Lighting, 20 F. 2d at 296). Finally, to the extent Lawson v. Liberty Nat'l Bank & Trust Co., 18 B.R. 384 (W.D.N.Y. 1982), is more factually analogous, it predates Scarpino and the Court declines to extend it. In any event, this Court disagrees with Lawson's conclusion that a similarly evasive series of transfers allowed a debtor to claim exemptions.

The Court notes that other Circuits and lower courts have reached a different result than Scarpino. See, e.g. In re Anderson, 496 B.R. 812, 816 (E.D. La. 2013):

> The court takes note of two decisions that are directly on point with the facts of this case. In re Scarpino . . . and In re Pederson, 230 B.R. 158 (9th Cir. BAP 1999) by the Ninth Circuit Bankruptcy Appellate Panel. Both have held that a debtor who had a lien recorded against him while he owned no property, but then later acquired property, was not entitled to avoid the lien pursuant to §§ 522(f)(1)(A). Lower courts in both the Second and Ninth Circuits have accordingly followed the precedent in those cases. This court, however, is not bound by either the Scarpino or Pederson decisions . . . and . . . will adopt [the] reasoning of [Eleventh Circuit cases].

However, just as the Louisiana district court was not required to follow Second Circuit precedent and chose not to, this Court is

13

not required follow conflicting precedent and chooses not to here, especially where it is bound to follow Scarpino.

Moreover, as already stated, Patrusky does not contest the core holding of Scarpino, so conflicting cases are not concerning. If she had bought the house for the first time in 2016, after the Lien, it appears she would agree that the Lien would attach simultaneously, as it did in Scarpino. She argues that Scarpino does not apply because she never lost her interest with the 2013 Transfer and thus her interest predated the Lien. As already discussed, this Court does not agree, and finds that she acquired her interest in the Home with the 2016 Transfer.

The equities do not weigh in favor of concluding that the 2013 Transfer is voidable. As the Bankruptcy Court noted, the cases offered by Patrusky for the proposition that "the equitable interest should be recognized at the time of a fraudulent transfer do so to benefit the judgment creditor, who was . . . defrauded by the transfer, and not the debtor, who precipitated the dissipation of her own asset[s]." (Hr'g Tr. 14.) Initially, though Patrusky claims the 2013 Transfer is fraudulent, elsewhere in her brief, she states that "[i]n or about October 2013, [she] conveyed legal title to the Homestead to her daughter and son-in-law . . . for value." (Appellant's Br. at 6-7 (emphasis added).) Whatever her motives were, she transferred the Home to the Children in 2013, as evidenced by the deed, and they assumed a mortgage. In 2015, when

14

the Lien was entered, she had no interest. She reacquired her interest in 2016, and the preexisting Lien simultaneously attached. Moreover, she certainly has not admitted to the fraudulent conveyance in the pending state court action accusing her of that very thing. (see Hr'g Tr. 12.) Finally, Patrusky's claim that her motives for both transfers were not underhanded (see Letter from Patrusky to Judge Trust, found at Bankr. 17-8025 D.E. 31), is belied by her attempts to avoid a valid judgment against her.

The Court appreciates Patrusky's impulse to attempt to save her home, but the manner in which she does so precludes the Court, as it did the Bankruptcy Court, from finding that the Lien can be legally avoided. And as observed by the Bankruptcy Court, if the Court adopted Patrusky's position that the 2013 Transfer should be disregarded, "Jungle Treats should be restored to the position that it would have enjoyed absent the transfer. Had that occurred, there would have been sufficient value in the property for a significant portion of the Jungle Treats judgment lien to attach to, even considering the debtor's homestead claim." (Hr'g Tr. 17; see NY CPLR § 5206 (d) ("the lien of the judgment attaches to the surplus")).

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order is AFFIRMED and this appeal is DENIED. The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March  25 , 2019
       Central Islip, New York